IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Christian Bautista Tinoco, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-CV-10460 |
| | ) | |
| | ) | Hon. Amy J. St. Eve |
| Thomas Cioppa, Chicago District Director, | ) | |
| USCIS; Martha Medina, Chicago Field Office | ) | |
| Director, USCIS; Rose Cavazos, Naturalization | ) | |
| Branch Chief, USCIS; John Kelly, Secretary of | ) | |
| the U.S. Department of Homeland Security, | ) | |
| James McCament, Acting Director, USCIS, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Defendants Thomas Cioppa, Martha Medina, Rose Cavazos, John Kelly, and James McCament, collectively, "Defendants," have moved for summary judgment on Plaintiff Christian Bautista Tinoco's Complaint brought pursuant to 8 U.S.C. § 1421(c). (R. 19, Defs.' Mot. for Summ. J.) For the following reasons, the Court grants Defendants' motion for summary judgment.

## **BACKGROUND**

This case arises from United States Citizenship and Immigration Services' ("USCIS") denial of Plaintiff's naturalization application due to allegations of money laundering and narcotics smuggling.[1]

---

[1] Plaintiff did not respond to Defendants' Rule 56.1 Statement of Material Facts, so the Court deems those facts admitted for purposes of this motion. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015). ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the

1

**I.     Plaintiff's Naturalization Application**

Plaintiff is a native and citizen of Colombia and a legal permanent resident of the United States. (Defs.' Statement of Facts ("SOF") ¶ 1; Certified Administrative Record ("CAR")[2] 31.) He was born in 1987 and was admitted to the United States on March 30, 1999, as a legal permanent resident and as the step-child of a United States citizen on a conditional basis. (SOF ¶ 1; CAR 31, 45.) The Government removed Plaintiff's conditions and his mother's when it approved her I-751 application. (SOF ¶ 2; CAR 31.) On April 1, 2013, Plaintiff applied for citizenship by filing an N-400 application with USCIS. (SOF ¶ 3; CAR 31, 94, 180.) In connection with that application, USCIS interviewed Plaintiff at the Chicago District Office on September 23, 2013. (SOF ¶ 4; CAR 31, 163-180.) On August 31, 2015, USCIS notified Plaintiff that he was scheduled for a re-interview on September 10, 2015. (SOF ¶ 6; CAR 157.) USCIS instructed Plaintiff to bring his Alien Registration Card, his driver's license or State ID, his passport, his tax returns, his bank statements from 2010 and 2011, and records of any wire transfers he had made in 2010 and 2011. (SOF ¶ 7; CAR 157.) Plaintiff, through counsel, submitted his driver's license, Alien Registration Card, Colombian passport, tax transcripts and payments receipts from 2008 and 2010-2014, but he did not submit any evidence of wire transfers. (SOF ¶¶ 8-10; CAR 107-36.)

At Plaintiff's September 10, 2015 interview, Interview Officer Milissis reviewed Plaintiff's N-400 application with him and counsel and confirmed that Plaintiff wished to change his name to Christian Andres Bautista and that he had been convicted of two traffic offenses since he filed his 2013 application. (SOF ¶ 11; CAR 79-99.) At the end of the interview,

---

motion.") The parties do not dispute, however, that the Certified Administrative Record is the source for all the relevant facts here.
[2] Defendants' Statement of Facts relies heavily on the Certified Administrative Record, which Defendants attached as exhibit. (R. 17, Ex.'s 1-3, Certified Administrative Record.)

Milissis attempted to take Plaintiff's sworn statement, but Plaintiff refused to answer questions and his attorney stated that Plaintiff's "application [wa]s his sworn statement." (SOF ¶¶ 12-13; CAR 100.) Plaintiff also stated that he did not bring the additional documents USCIS requested (his wire transfer records) because "they [we]re not relevant or material." (SOF ¶ 13; CAR 101.) When Millissis informed Plaintiff that those documents were relevant to his naturalization application, Plaintiff responded that USCIS could subpoena the documents if they wanted them. (SOF ¶ 15; CAR 101.) Milissis also asked Plaintiff if he had ever "given the government any information or documentation that was false, fraudulent, or misleading" or "given false information to any government official to gain an immigration benefit," and Plaintiff responded "No" to both questions. (SOF ¶¶ 16-17; CAR 101.)

Milissis then asked Plaintiff a number of questions about wire transfers and bank accounts. (SOF ¶ 18.) Plaintiff said that he did not transfer money by wire transfer in 2010, but that he had recently transferred money to his girlfriend in Argentina and Colombia. (CAR 101.) Plaintiff refused to submit wire transfer documents and stated that he had not tried to obtain them. (CAR 102.) He said that he had made 4-5 wire transfers to Colombia and 1-2 transfers to Argentina, but he refused to state the purpose of the transactions. (SOF ¶ 20; CAR 102.) Plaintiff stated that he had never participated in a drug conspiracy or transferred money related to a drug transaction. (CAR 102.) Plaintiff and his counsel refused to sign the sworn statement. (SOF ¶ 21; CAR 103.)

After the interview, on September 24, 2015, Homeland Security Special Agent Daniel Miller submitted a memorandum indicating that pursuant to an investigation involving Plaintiff, he had obtained "specific evidence related to wire transfer activity conducted in 2010 to an individual in Colombia related to narcotics trafficking." (SOF ¶ 22; CAR 212.) Miller also

submitted a money transfer receipt indicating that Plaintiff sent $1,700 to Maira Alejandra Loaiza Ramirez in Colombia in May 2010. (SOF ¶ 23; CAR 213.)[3] On October 27, 2015, USCIS sent Plaintiff a notice indicating that the agency intended to deny his N-400 application based on derogatory information it had received. (SOF ¶ 24; CAR 68.) The notice informed Plaintiff that he could respond within 15 days to oppose the denial and explained that USCIS had received information indicating that Plaintiff was the subject of a criminal investigation involving narcotics smuggling and money laundering, and that he had made suspicious wire transfers to an individual in Colombia. (SOF ¶¶ 25-26; CAR 70.) The notice explained that this information "brings into question whether [Plaintiff] ha[d] met [his] burden of meeting the good moral character requirement" to become a citizen. (SOF ¶ 27; CAR 70.) The notice also reiterated that Plaintiff had refused to submit bank statements, credit statements or wire transfer documents and had refused to answer certain questions. (SOF ¶¶ 28-29; CAR 71.) Specifically, the notice stated that Plaintiff "failed to provide within a reasonable time such documents, information, or testimony deemed necessary by USCIS to establish [his] eligibility to naturalize," and thus, Plaintiff had "failed to prosecute [his] application and it must be denied." (SOF ¶ 30; CAR 72.)

In addition, the notice explained that USCIS considered Plaintiff's failure to provide requested documents and testimony to be "of additional concern" because he had "provided false testimony." (SOF ¶ 31; CAR 72.) Specifically, the notice explained that Plaintiff had testified that he "never transferred any money to Colombia in the year 2010," but USCIS had records indicating that he sent $1,700 to Maira Ramirez in Colombia by wire transfer in May 2010. (SOF ¶ 32; CAR 72.) USCIS also stated that Plaintiff had committed perjury "by making

---

[3] Pages 212 and 213 in Defendants' initial CAR submission were redacted, but Defendants' submitted un-redacted version of these pages in a separate filing. (R. 18, Notice of Correcting CAR.)

4

statements under oath believing them not to be true," rendering him ineligible to naturalize. (SOF ¶ 33; CAR 73) (citing 8 CFR § 316.10(b)(3)(iii).) Accordingly, the notice explained that USCIS had denied Plaintiff's application because he (1) failed to prosecute his application by refusing to provide documents and information; (2) had not established that he was a person of good moral character; and (3) had committed unlawful acts within the statutory period. (SOF ¶ 34; CAR 73.) On November 18, 2015, USCIS denied Plaintiff's application. (SOF ¶ 35.) The denial informed Plaintiff that if he believed he could overcome the grounds for denial, he needed to submit a request for a hearing on Form N-336 within 30 days of the decision. (*Id.* ¶ 36; CAR 65.) On December 15, 2015, Plaintiff filed his Form N-336 requesting appeal of his denial. (SOF ¶ 38; CAR 42-44.) To support his appeal, Plaintiff attached a brief, sworn affidavit, and wire transfer records from Ria and Western Union. (SOF ¶ 39; CAR 45-52.) In the affidavit, Plaintiff asserted that he told the truth in his interview and never sent a wire transfer to Maira Ramirez in 2010 and that, during the relevant time, he only sent wire transfers to or for his girlfriend, Luisa Fernanda Grizales Pena. (SOF ¶ 40; CAR 50.) Plaintiff's wire transfer records do not show a May 11, 2010 transfer to Maira Ramirez for $1,700. (SOF ¶ 41; CAR 50.)

II.     **Plaintiff's Complaint**

In his Complaint, Plaintiff alleges that Defendants have improperly interpreted the "good moral character" requirement. (R. 1, Compl. ¶ 4.) He alleges that USCIS never produced any documentation of the wire transfer Plaintiff allegedly sent to Colombia in 2010 or disclosed the wire service Plaintiff allegedly used. (*Id.* ¶ 10.) Plaintiff alleges that he timely appealed the USCIS denial of his N-400 application, and USCIS subsequently denied his N-336 appeal on October 14, 2016. (*Id.* ¶¶ 11-12.) Plaintiff further alleges that he has the right to obtain *de novo* judicial review pursuant to Section 310(c) of the Immigration and Nationality Act, 8 U.S.C. §

5

1421(c).  (*Id.* ¶13.)  Plaintiff asks that the Court find that the record establishes that he has met the "good moral character" standard and is entitled under the law to have his naturalization application granted.  (*Id.* ¶ 14.)

## LEGAL STANDARDS

### I. Federal Rule of Civil Procedure 56

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* (citing *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986)); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000) ("The existence of a mere scintilla of evidence supporting a plaintiff's position is insufficient; there must be evidence on which a jury could reasonably find for the plaintiff.").  In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party.  *Anderson*, 477 U.S. at 255.

The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that it is entitled to judgment as a matter of law.  *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010).  If the moving party demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute."  *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing there is a

genuine issue for trial." *Hannemann v. S. Door Cty. School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012).

## II. Northern District of Illinois Local Rule 56.1

Northern District of Illinois Local Rule 56.1 governs how the parties identify material facts and potential disputed material facts. "The purpose of Rule 56.1 is to have the litigants present to the district court a clear, concise list of material facts that are central to the summary judgment determination. It is the litigants' duty to clearly identify material facts in dispute and provide the admissible evidence that tends to prove or disprove the proffered fact." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015). Local Rule 56.1(a) "requires the party moving for summary judgment to file and serve a 'statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law.'" *Id.* at 218 (citation omitted). "The non-moving party must file a response to the moving party's statement, and, in the case of any disagreement, cite 'specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Petty v. Chicago,* 754 F.3d 415, 420 (7th Cir. 2014) (citation omitted); *see also* L.R. 56.1(b)(3)(A). Local Rule 56.1(b)(3)(C) requires the non-moving party to file a separate statement of additional facts. *See Thornton v. M7 Aerospace LP*, 796 F.3d 757, 769 (7th Cir. 2015).

Local Rule 56.1 statements and responses should identify the relevant admissible evidence supporting the material facts – not make factual or legal arguments. *See Zimmerman v. Doran,* 807 F.3d 178, 180 (7th Cir. 2015). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Curtis*, 807 F.3d at 218 (quoting *Cracco v.*

7

*Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009)). The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere,* 791 F.3d 764, 767 (7th Cir. 2015).

**ANALYSIS**

**I.      Section 1421(c)**

The Attorney General has the sole authority to naturalize persons as citizens of the United States. 8 U.S.C. § 1421(a). Congress empowered the district courts to review the Attorney General's naturalization decisions in § 1421(c), which provides:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. 1421(c). A court's review of the denial of a naturalization application is *de novo*. *Id. See also O'Sullivan v. U.S. Citizenship & Immigration Servs.*, 453 F.3d 809, 812 (7th Cir. 2006) ("Congress specifically calls for de novo review in naturalization cases, while ordering great deference in other immigration contexts.")

To qualify for naturalization, an immigrant must show that during the period she has been living in the United States she "has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." 8 U.S.C. § 1427(a)(1)-(3); *see also* 8 C.F.R. § 316.2.[4]  "[A] person shall be deemed not to be of good moral character if he 'has given false testimony for the purpose of obtaining' immigration or naturalization benefits." *Kungys v. United States*, 485 U.S.

---

[4] An immigrant must also show that he has resided continuously in the U.S. for five years prior to his application and from the date of his application up to the time of admission to citizenship, but these requirements are not at issue here.

8

759, 760 (1988). "[A] person [is considered] of bad moral character on account of having given false testimony if he has told even the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits." *Id.* at 780; *see also Fedorenko v. U.S.*, 449 U.S. 490, 506-07 (1981) ("Because the right to become an American citizen is such a precious one, no less precious than the right to liberty and life, there must be strict compliance with all the congressionally imposed prerequisites before conferring citizenship.")

The applicant for citizenship bears the burden of proving her eligibility. *INS v. Pangilinan*, 486 U.S. 875, 886 (1988); *Berenyi v. INS*, 385 U.S. 630, 637 (1967) ("it has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect.") The Supreme Court has held that all "doubts should be resolved in favor of the United States and against the claimant.'" *Id.* An applicant must prove her eligibility by a preponderance of the evidence. *Plewa v. I.N.S.*, 77 F. Supp. 2d 905, 908–09 (N.D. Ill. 1999) (citing *Berenyi*, 385 U.S. at 637); *see also Nyari v. Napolitano*, 562 F.3d 916, 919 (8th Cir. 2009); *United States v. Hovsepian*, 359 F.3d 1144, 1168 (9th Cir. 2004); *see also* 8 C.F.R. § 316.2(b).

**II.     Defendants Are Entitled to Summary Judgment**

Defendants argue that the Court should grant summary judgment in their favor because Plaintiff cannot meet his burden of showing that he has met the statutory requirements for naturalization because: (1) Plaintiff cannot show that he had the requisite good moral character and (2) Plaintiff failed to prosecute his application for naturalization. The Court agrees.

**A.  Good Moral Character**

Defendants first argue that their denial of Plaintiff's naturalization application was appropriate because Plaintiff gave false testimony to obtain an immigration benefit and thus

9

lacks the good moral character required to naturalize. As noted above, "a person [is considered] of bad moral character on account of having given false testimony if he has told even the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits." *Kungys*, 485 U.S. at 780; *see also* 8 U.S.C. § 1101(f)(6). Applying this standard, several courts have rejected naturalization applications where USCIS provided evidence indicating that the applicant gave false testimony in his interview, and the applicant could not demonstrate with more convincing evidence that the testimony was not false. *See, e.g.*, *Babatunde v. Napolitano*, No. 09 C 2600, 2011 WL 332523, at *8-9 (N.D. Ill. Jan. 31, 2011) (entering judgment against applicant because government had evidence applicant lied about her children); *Mukarram v. Collett*, 649 F. Supp. 2d 418, 423 (D. Md. 2009) (granting summary judgment in favor of government because record indicated that applicant made false or misleading statements about his employer and employment title); *Keaik v. Dedvukay*, 557 F. Supp. 2d 820, 827–28 (E.D. Mich. 2008) (rejecting application because applicant failed to disclose traffic violations in interview); *Aboud v. I.N.S.*, 876 F. Supp. 938, 940–41 (S.D. Ohio 1994) (rejecting naturalization application because applicant failed to disclose one of his jobs and falsely answered that he had never been arrested).

Here, the record indicates that Plaintiff gave false testimony in his interview with USCIS. The evidence in the record includes a Vigo Money Transfer receipt indicating that Plaintiff made a wire transfer in the amount of $1,700 to Maira Alejandra Loaiza Ramirez in Cali Cali, Colombia on May 11, 2010. (CAR 213.) While Plaintiff claims that he did not make this transfer, notably, the receipt reflects not just that the sender of the transfer had Plaintiff's name, but also that the sender had the same address Plaintiff listed on his naturalization application—

10

3253 W Crystal Avenue. (*Id.*) Despite this evidence, the transcript from Plaintiff's USCIS interview on September 15, 2015 includes the following exchange:

> Q: Specific to 2010, have you sent any money by wire transfer to Columbia [sic]?
> A: No

(*Id.* 101.) Given the evidence in the record—the receipt with the details of the transfer to Colombia—Defendants have established that Plaintiff's testimony was false. Plaintiff attempts to meet his burden of establishing his good moral character and create an issue of fact by asserting that he did not make the 2010 wire transfer and providing Western Union and Ria records regarding his wire transfer activity that do not show a 2010 transfer to Colombia. When USCIS first asked Plaintiff to provide records relating to his wire transfers, he refused to do so, and even now, the records Plaintiff provided, from Western Union and Ria, are not from the Vigo Money Transfer service that the receipt indicates Plaintiff used for the 2010 transfer. Given the concrete evidence of Plaintiff's false testimony, his additional post-interview wire transfer documents and statement that he did not make the transfer are not sufficient to meet his burden of establishing his eligibility for naturalization or creating an issue of fact.

Accordingly, the Court grants Defendants' motion for summary judgment because, based upon a *de novo* review of the record, Plaintiff has failed to establish by the preponderance of the evidence that he is a "person of good moral character." 8 U.S.C. § 1427(a).

### B. Failure to Prosecute Application

Defendants also argue that their denial of Plaintiff's naturalization application was appropriate because Plaintiff failed to prosecute his naturalization application. Title 8 Code of Federal Regulations, Section 335.7 provides guidance regarding an applicant's failure to prosecute a naturalization application:

> An applicant for naturalization who has appeared for the examination on his or her application as provided in 8 CFR 335.2 shall be considered as failing to prosecute such application if he or she, without good cause being shown, either failed to excuse an absence from a subsequently required appearance, or fails to provide within a reasonable period of time such documents, information, or testimony deemed by the Service to be necessary to establish his or her eligibility for naturalization. The Service shall deliver notice of all such requests for appearance or supporting evidence, in writing, to the applicant either in person or to the applicant's last known address.

8 C.F.R. § 335.7. Based on these regulations, several courts have rejected naturalization applications where the plaintiff failed to provide documents or testimony in a USCIS interview and could not show good cause for that failure. *See, e.g.*, *Beleshi v. Holder*, No. 12-11681, 2014 WL 4638359, at *9 (E.D. Mich. Sept. 16, 2014) (finding applicant failed to prosecute where USCIS requested additional documents concerning his legal history and applicant failed to provide a relevant police report); *Grunbaum v. Dist. Dir., CIS, Detroit Office*, No. CIV.A. 10-10147, 2012 WL 2359966, at *6 (E.D. Mich. May 21, 2012), *report and recommendation adopted,* No. 10-10147, 2012 WL 2359958 (E.D. Mich. June 21, 2012) (finding failure to prosecute where applicant refused to produce requested divorce documents because he said they were not relevant); *Keaik v. Dedvukay*, 557 F. Supp. 2d 820, 829 (E.D. Mich. 2008) (finding applicant failed to prosecute where he only produced some of the documents requested and failed to provide documents relating to his probation).

Here, it is undisputed that Plaintiff failed to provide both documents and testimony during his interview that USCIS deemed "necessary to establish his [ ] eligibility for naturalization." 8 C.F.R. § 335.7. The transcript from Plaintiff's interview includes the following exchange:

> Q: How much money [did Plaintiff transfer]?
> A: Less than $250.
> Q: What was the purpose?
> Atty: Not relevant.
> Q: Mr. Bautista, I need you to answer.

12

>A: Not relevant.
>Q: How many transactions?
>A: I don't know.
>
>Q: I had asked for bank account statements and checking account statements.
>A: Subpoena those.
>Q Are you refusing to submit these documents?
>A: Yes.
>Q: I also asked for documents of wire transfers.
>A: That's just a piece of paper, I don't have those.
>Q: Are you able to obtain them?
>A: I don't think so.
>Q: Have you tried?
>A: No.

(CAR 101-02.) The transcript establishes that in his interview, Plaintiff explicitly refused to answer questions about the purpose of his wire transfers and refused to produce documents related to both his wire transfers and his bank and checking statements. Plaintiff has also failed to provide good cause for why he did not submit the requested documents. *Grunbaum*, WL 2359966, at *6 (finding applicant's statement that requested documents were not relevant insufficient). While Plaintiff claims that the documents USCIS requested were part of a fishing expedition, even viewing the evidence in the light most favorable to Plaintiff, the record indicates that testimony and documents regarding his wire transfers were directly related to his eligibility for naturalization because they related to his potential involvement in money transfers to Colombia connected to allegations of money laundering and narcotics smuggling. Such evidence would be highly relevant to a determination of his good character. *See, e.g.*, *Beleshi*, WL 4638359, at *9 (documents relating to his legal history were relevant to applicant's character evaluation).

Accordingly, the Court finds that Plaintiff has failed to prosecute his application for naturalization and grants Defendants' motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court grants the Defendants' motion for summary judgment and dismisses Plaintiff's Complaint with prejudice.

**DATED:** September 6, 2017

**ENTERED**

_____
AMY J. ST. EVE
United States District Court Judge